UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TOWN OF NEWBURGH, NEW YORK,

                                    Plaintiff,

      - against -

NEWBURGH EOM LLC, NEWBURGH
EOM LLC d/b/a CROSSROADS HOTEL, and
CROSSROADS HOTEL,

                                  Defendants.
------------------------------------------------------------x

**OPINION & ORDER**

No. 23-CV-4212 (CS)

<u>Appearances</u>:

Jeffrey D. Sherwin, Esq.
Nicholas J. Berwick, Esq.
MacVean, Lewis, Sherwin & McDermott, P.C.
Middletown, New York
*Counsel for Plaintiff*

Todd E. Soloway
Perry M. Amsellem
Todd B. Marcus
Lawrence P. Keating
Pryor Cashman LLP
New York, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

      Before the Court is Plaintiff's motion to remand. (ECF No. 29.)  For the following

reasons, the motion is GRANTED.

I.      **BACKGROUND**

      The following facts are drawn from the Complaint, (ECF No. 4-1 ("Compl.")), which I

accept as true for the purposes of the motion.  *See Torres v. St. Vincent DePaul Residence*, No.

22-CV-7012, 2023 WL 2754305, at *1 n.1 (S.D.N.Y. Apr. 3, 2023); *Skornick v. Principal Fin.*

*Grp.*, 383 F. Supp. 3d 176, 178 n.1 (S.D.N.Y. 2019).[1]   Because the validity of a removal petition

involves a jurisdictional inquiry, I may also draw additional facts where necessary from the

parties' submissions, such as exhibits attached to the notice of removal or the motion papers.  *See*

*Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010); *Torres*, 2023 WL 2754305, at *1 n.1;

*Winters v. Alza Corp.*, 690 F. Supp. 2d 350, 353 n.3 (S.D.N.Y. 2010).

Plaintiff Town of Newburgh (the "Town" or "Plaintiff") brought this action in New York

State Supreme Court, Orange County, on May 12, 2023, against Defendant Crossroads Hotel and

Defendant Newburgh EOM LLC, a New York limited liability company that owns and operates

the Crossroads Hotel, which is located in the Town (the "Hotel" or "Defendants").[2]  (*See*

*generally* Compl.)  The Town of Newburgh Municipal Zoning Code § 185-3 defines a "Hotel"

as:

> One or more buildings offering transient lodging accommodations on a fee or hire
> basis to the general public, and which provide rooms or areas for group assembly
> and a central kitchen only and a central dining room within the building or in an
> accessory building.  A hotel shall not constitute an individual's or family's
> primary residence and shall not be construed to be a multiple dwelling.

Code of Town of Newburgh, NY § 185-3.  The New York State Building Code defines

"transient" as "occupancy of a dwelling unit or sleeping unit for not more than 30 days."  2020

Building Code of New York State § 202.   The Hotel fits the definition of "hotel," and its

operation is subject to a Certificate of Occupancy, issued pursuant to the Town of Newburgh

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

[2] Defendants assert that Newburgh EOM LLC, Newburgh EOM LLC d/b/a/ Crossroads Hotel, and the Crossroads Hotel are all the same entity.  (ECF No. 20 at 1; ECF No. 32 ("Hotel's Opp.") at 1.)

Building Construction Code and Municipal Code in 1990, authorizing its use as a hotel.[3] (Compl. ¶¶ 15-18.)

On May 5, 2023, New York City Mayor Eric Adams contacted the Town's supervisor, Gilbert J. Piaquadio, regarding a plan to "relocate sixty (60) single male asylum seekers to the Town . . . for a period of four (4) months at the Crossroads Hotel." (*Id.* ¶ 19.)  On May 8, 2023, the Town's Board convened an emergency meeting to discuss the use of the Hotel as long-term housing and passed a resolution to appoint counsel to seek an injunction to prevent a violation of the Town Codes.  (*Id.* ¶ 24.)  On May 9, 2023, Orange County Executive Stephen Neuhaus declared a state of emergency for the county, ordering that "all hotels, motels and/or any facilities allowing short-term rentals may not accept any asylum seekers for long term housing within Orange County." (*Id.* ¶ 23.)  The next day, the Town's Code Compliance Supervisor, Building Inspector, and Fire Inspector conducted an inspection of the Hotel, noting preparations being made to accommodate the asylum seekers from New York City.  (*See id.* ¶ 25.)  On May 11, 2023, two busloads of asylum seekers arrived from the City and were housed at the Hotel. (*Id.* ¶ 26.)

---

[3]  The Town of Newburgh Municipal Code § 185-50 states, in relevant part:

> A certificate of occupancy shall be deemed to authorize, and is required for, both initial and continued occupancy and use of a building or the land to which it applies.  The following shall be unlawful until a certificate of occupancy shall have been applied for and issued by the Building and Code Enforcement Officer:
>
> > (1) Occupancy and use of a building hereafter erected, structurally altered or moved or any change in the use of an existing building.
> >
> > (2) Occupancy, use or any change in the use of any land.
> >
> > (3) Any change in use of a nonconforming use.

(Code of Town of Newburgh, NY § 185-50).

In the Complaint, Plaintiff seeks injunctive relief and declaratory judgments that the Hotel's use to house asylum seekers or any other person beyond 30 days violates the Town of Newburgh Building Construction Code § 71-8,[4] (*id.* ¶¶ 27-35), and the Town of Newburgh Municipal Code § 185-50, (*id.* ¶¶ 38-42), which require compliance with certificates of occupancy and preclude changes of use not authorized by a certificate of occupancy.  On May 16, 2023, the state court held oral argument on the Town's application for a temporary restraining order ("TRO").  (*See* ECF No. 29-6.)  Following oral argument – during which the Town limited its request to a TRO barring any future long-term residents of the Hotel, but agreed that the current residents could stay, (*see* ECF No. 29-6 at 39:1-15) – the state court granted a TRO that, among other things, enjoined Defendants from (1) transporting additional migrants or asylum seekers to Orange County; (2) modifying, altering, or changing the use of the Hotel – except to change the bed configurations in rooms currently occupied – "unless and until such time as appropriate permit applications are filed with the Town of Newburgh, appropriate inspections are conducted, and continued activity is approved by the Town of Newburgh and any other required governmental authority"; (3) operating as a shelter for non-transient guests, except for the 110 persons already occupying the property, "unless and until such use is approved by the Town of Newburgh and any other required governmental authority"; and (4) using the Hotel "in

---

[4] Town of Newburgh Building Construction Code § 71-8 reads, in relevant part:

> A certificate of occupancy or certificate of compliance shall be required for any work which is the subject of a building permit and for all structures, buildings, or portions thereof, which are converted from one use or occupancy classification or subclassification to another.  Permission to use or occupy a building or structure, or portion thereof, for which a building permit was previously issued shall be granted only by issuance of a certificate of occupancy or certificate of compliance.

(Code of Town of Newburgh, NY § 71-8).

violation of the Town Code of the Town of Newburgh New York." (*See* ECF No. 20-3 at 28-31.)[5]

## II.   PROCEDURAL HISTORY

On May 21, 2023, the Hotel timely removed the action to this Court, asserting federal question jurisdiction pursuant to the "arising under" doctrine of 28 U.S.C. § 1331, as incorporated into 28 U.S.C. § 1441. (*See* ECF No. 4 at ¶¶ 5-21.) On May 26, 2023, the Hotel's counsel filed a letter requesting, among other things, a conference to address a briefing schedule for Plaintiff's anticipated motion to remand. (*See* ECF No. 12.) On May 30, 2023, with the Hotel's consent, I extended the state court's TRO to the date of my decision on the Town's anticipated motion for preliminary injunction. (*See* ECF No. 13.) At a June 2, 2023 pre-motion conference, I set a briefing schedule for the remand motion. (*See* Minute Entry dated June 2, 2023.) The Hotel subsequently filed an Amended Notice of Removal, (ECF No. 20 (the "ANOR")), asserting as an additional basis for removal that this matter is a civil rights case under 28 U.S.C. § 1443(1), (*see id.* ¶¶ 12-31). The instant motion followed.

---

[5] Citations to ECF No. 20-3 refer to page numbers set by the Court's Electronic Case Filing ("ECF") system.

The TRO indicated that it was on consent. (ECF No. 20-3 at 30.) On May 17, 2023, the Hotel filed a letter requesting a correction to the TRO to reflect that the Hotel consented only to those portions that limited the number of asylum seekers currently staying at the Hotel (and another hotel) and required it to identify those individuals to the extent permitted by law. (*See* EF003105-2023, NYSCEF Doc. No. 26.) That day, Judge Sciortino entered an amended TRO reflecting that correction. (*See* EF003105-2023, NYSCEF Doc. No. 27.) The Court takes judicial notice of the docket entries filed in the state court action from which the Hotel removed this case. *See Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, No. 04-CV-3531, 2022 WL 2529281, at *3 (S.D.N.Y. July 7, 2022). Citations to "EF003105-2023, NYSCEF Doc. No." refer to the corresponding docket entries for that case.

III.     **LEGAL STANDARDS**

As a general matter, removal jurisdiction must be "strictly construed," *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002), and any doubts should be resolved against removability "out of respect for the limited jurisdiction of the federal courts and the rights of the states," *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007).  The party seeking removal bears the burden of demonstrating that removal is proper.  *See McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 145 (2d Cir. 2017) ("The defendant, as the party seeking removal and asserting federal jurisdiction, bears the burden of demonstrating that the district court has original jurisdiction."); *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 327 (2d Cir. 2011) ("A party seeking removal bears the burden of showing that federal jurisdiction is proper.").  Here, the Hotel asserts two grounds for removal: (1) under 28 U.S.C. § 1443(1) as a civil rights case, (*see* ECF No. 20 ¶¶ 12-31), and (2) under 28 U.S.C. § 1441 as a case over which this court has original jurisdiction because it "aris[es] under" federal law, (*see id.* ¶¶ 32-42).

A.     **Removal Under 28 U.S.C. § 1443(1)[6]**

Section § 1443(1) permits removal from state court of criminal or civil actions against "any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal rights of citizens of the United States, or of all persons within the jurisdiction thereof[.]"  28 U.S.C. § 1443(1); *see Sea Gate Ass'n v. Krichevsky*, No. 18-CV-3408, 2019 WL 8587287, at *7 (E.D.N.Y. June 21, 2019).

---

[6] The Hotel concedes that it cannot, and does not, seek to remove the case under 28 U.S.C. § 1443(2).  (*See* Hotel's Opp. at 10 n.6.)

Removal under this statute must satisfy a two-part test: "'First, it must appear that the right allegedly denied the removal petitioner [in state court] arises under a federal law providing for specific civil rights stated in terms of racial equality.'" *New York v. Best*, No. 23-CV-26, 2023 WL 198736, at *1 (E.D.N.Y. Jan. 17, 2023) (alterations in original) (quoting *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975)); *see Suffolk Cnty. Dep't of Soc. Servs. v. Clarke*, 807 F. App'x 133, 135 (2d Cir. 2020) (summary order) ("[T]he Supreme Court has held that [section 1443] applies only to removals based on claims of racial discrimination."); *Martin v. Town of Tonawanda Police Dept.*, No. 23-CV-419, 2023 WL 8539440, at *5 n.5 (W.D.N.Y. Dec. 11, 2023) (section 1443 "relates to circumstances involving the denial of equal rights in terms of racial equality.").

"'Second, it must appear on the face of the notice that the removal petitioner is denied or cannot enforce the specified federal rights in the courts of (the) [*sic*] State.'" *Best*, 2023 WL 198736, at *1 (quoting *Johnson*, 421 U.S. at 219). "This provision normally requires that the denial be manifest in a formal expression of state law, such as a state legislative or constitutional provision, rather than a denial first made manifest in the trial of the case." *Id.*; *see Crown Asset Mgmt., LLC v. Cunningham*, No. 22-938, 2022 WL 17660543, at *1 (2d Cir. Dec. 14, 2022) (summary order) ("Moreover, section 1443(1) normally requires that the denial be manifest in a formal expression of state law, unless an equivalent basis could be shown for an equally firm prediction that the defendant would be denied or cannot enforce the specified federal rights in the state court."). The Supreme Court has described removal under section 1443(1) as narrow, *see Georgia v. Rachel*, 384 U.S. 780, 804 (1966), and the statute applies only in "rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or

federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court," *Johnson*, 421 U.S. at 220.

"Conclusory references to civil rights in a removal petition are woefully inadequate to support removal on the basis of section 1443." *Grohs v. Grohs*, No. 17-CV-1605, 2017 WL 4678182, at *3 (D. Conn. Oct. 17, 2017), *adhered to on reconsideration*, 2017 WL 5171845 (D. Conn. Nov. 8, 2017); *see Murray v. Hy Cite Corp/Royal Prestige*, 150 F. Supp. 2d 527, 530 (E.D.N.Y. 2001) ("[T]he removal petition must contain sufficient facts to show that there was such a denial by the state court and a citation or reference to a state law that deprived the petitioner of equal protection.").

### B.    Removal Under 28 U.S.C. § 1441

An action filed in state court may be properly removed by a defendant if "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "[A] district court, when determining whether it has original jurisdiction over a civil action, should evaluate whether that action could have been brought originally in federal court." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748, *reh'g denied*, 140 S. Ct. 17 (2019). "This requires a district court to evaluate whether the plaintiff could have filed its operative complaint in federal court, either because it raises claims arising under federal law or because it falls within the court's diversity jurisdiction." *Id.* Where, as here, there is no diversity jurisdiction,[7] "removal is proper if there is federal-question jurisdiction under 28 U.S.C. [§] 1331, which grants district courts original jurisdiction over actions 'arising under' federal law." *Torres*, 2023 WL 2754305, at *2; *see* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

---

[7] Plaintiff and Defendants are all citizens of New York. (*See* Compl. ¶¶ 12-15.)

8

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 60 (2d Cir. 2023). "[A] suit seeking recovery under state law is not transformed into a suit arising under federal law merely because, to resolve it, the court may need to interpret federal law." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271 (2d Cir. 2005). In that same vein, "[a] case may *not* be removed to federal court on the basis of a federal defense. . . ." *Id.* (emphasis in original); *see Sea Gate*, 2019 WL 8587287, at *6 ("Notably, a defendant cannot evade the well-pleaded complaint rule by raising a federal question in its responsive pleadings and then attempting to remove on that basis.").

But under the so-called *Grable* exception to the well-pleaded complaint rule, *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), where a well-pleaded claim originates under state law, "'arising under jurisdiction' still lies in 'a special and small category of cases' in which the federal issue is:  '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Solomon*, 62 F.4th at 63 (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).  If these four requirements are met, "[federal] jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14). "If any of those four requirements is not satisfied, the exception does not apply." *Torres*, 2023 WL 2754305, at *3.

IV.   **DISCUSSION**

    The Town argues that this case must be remanded to state court because it has pleaded only state law claims seeking only state law relief and thus, under the well-pleaded complaint rule, this Court lacks subject matter jurisdiction.  (*See generally* ECF No. 29-4 ("P's Mem.").)  It also contends that the Hotel has not satisfied the second prong of the test for removal under 28 U.S.C. § 1443(1).  (*See* ECF No. 33 ("P's Reply") at 5-8.)[8]  In opposition, the Hotel asserts that this Court has jurisdiction because this is a civil rights case under section 1443(1) and, alternatively, "necessarily implicates substantial federal issues" under 28 U.S.C. § 1441.  (*See generally* Hotel's Opp.)  I will address each basis for removal in turn.

    A.   **28 U.S.C. § 1443(1)**

    The Hotel argues that it has satisfied both prongs of the test created by *Rachel* and its progeny for removal of a civil rights case.  It contends that it satisfies the first prong because in its ANOR it alleges that the Town's action against it violates Title II of the 1964 Civil Rights Act ("Title II"), 42 U.S.C. § 2000a, 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment to the Constitution – all provisions that prohibit discrimination on the basis of race – by denying the Hotel its rights to provide a place of public accommodation to all

---

    [8] The Hotel urges me to disregard the Town's arguments against § 1443(1) removal because the Town's motion for remand addressed only § 1441 and the Town did not address § 1443(1) until its reply.  (*See* Hotel's Opp. at 3-4.)  I cannot imagine why the motion only addressed § 1441, when the ANOR had been filed eleven days earlier and plainly relied on both grounds.  While arguments raised for the first time in a reply are typically waived, I nevertheless find it appropriate to consider the Town's argument regarding § 1443(1) because the Hotel – not the Town – bears the burden to establish proper removal, *see Martin*, 2023 WL 8539440, at *6; the Hotel has had ample opportunity to argue in favor of § 1443(1) removal, both in the ANOR and in its brief; and I must in any event satisfy myself that removal is proper here, *Gibson v. New York State Off. of Mental Health*, 372 F. Supp. 3d 23, 28 (N.D.N.Y. 2019) ("After a case has been removed from state court, a district court has a continuing obligation to satisfy itself that federal jurisdiction over the matter before it is proper.").

persons, free from discrimination based on race or color, in that the Town is attempting to preclude the Hotel from housing asylum seekers who are largely racial minorities  (*See* ANOR ¶¶ 1, 14, 17, 21-22, 28-30; Hotel's Opp. at 2, 10-12.)  I agree that in these circumstances, Title II, 42 U.S.C. § 1981, and the Equal Protection Clause are laws "providing for the equal civil rights" that may be an appropriate basis for removal under section 1443(1), *see Rachel*, 384 U.S. at 792-94; *City of Greenwood v. Peacock*, 384 U.S. 808, 825 (1966); *New Haven Firefighters Local 825 v. City of New Haven*, 120 F. Supp. 3d 178, 184 (D. Conn. 2015); *Bankhead v. New York*, No. 13-CV-3377, 2013 WL 6145776, at *2 n.2 (E.D.N.Y. Nov. 21, 2013), and the Town does not dispute this point.  But the Hotel fails to satisfy the second prong.

The Hotel points to the state lawsuit and resulting TRO as "evidence of unlawful punishment for the exercise of rights" conferred by Title II, section 1981, and the Fourteenth Amendment Equal Protection Clause.  (*See* Hotel's Opp. at 13; *see id.* at 14-15; ECF No. 20 ¶¶ 28-30.)  In other words, it contends that the mere fact of the Town's lawsuit and the state court proceedings suffices to meet the second prong.  (*See* Hotel's Opp. at 13-14.)  Its argument that "Newburgh's refusal to consent to lifting the State preliminary injunction is a continued denial of federal civil rights of the Hotel (and the Asylum Refugees) under Title II and 1981," (Hotel's Opp. at 8), is hard to square with the terms of the TRO (which precluded new arrivals but permitted 110 migrants already at the Hotel to stay) and with the Hotel's consent to extend the TRO pending decision on the instant motion and the Hotel's motion for a preliminary injunction. In any event, the argument that the state proceedings alone meet the second prong of the *Rachel* test fails.

The mere existence of state proceedings was sufficient for removal in the limited circumstances found in *Rachel*.  There the court found that the mere fact of the removing

defendants being subject to state prosecution amounted to a denial of rights in the state because there was a federal law prohibiting such prosecutions. *See Peacock*, 384 U.S. at 826. But there is no federal law prohibiting municipalities from enforcing zoning and building codes. The Town's Complaint seeks relief under its facially neutral zoning and occupancy laws, (*see* Compl. ¶¶ 27-42), and the Hotel does not have a federal right to evade such laws. *See Vill. of Chestnut Ridge v. Town of Ramapo*, No. 07-CV-9278, 2008 WL 4525753, at *13 (S.D.N.Y. Sept. 30, 2008) ("[Defendant] cannot credibly claim, and does not try to claim, that it has a right, under the [Fair Housing Act] or any federal statute, to ignore facially-neutral state environmental regulations."). The Circuit in *Emigrant Sav. Bank v. Elan Mgmt. Corp.* said that the defendant could not remove a foreclosure action "where the state's foreclosure law is not in conflict with any federal law or the Constitution," 668 F.2d 671, 676 (2d Cir. 1982), and the same would be true for a state's zoning or occupancy law. The mere fact that the Town commenced the state court case does not present a necessary conflict with federal law as did the state prosecutions in *Rachel*.

Rather, there must be some formal or at least concrete reason to believe that the Hotel will be unable to raise its federal rights in state court. As the Second Circuit has explained, "removal would lie when enforcement of the petitioner's rights in a state court was barred by a state statute or constitutional provision which was applicable in terms although unconstitutional on its face, but not when the allegation was simply that in practice he would be denied or be unable to enforce his rights." *Emigrant Sav. Bank*, 668 F.2d at 673-74. The Hotel points to no New York statute or constitutional provision unconstitutional on its face here. The mere fact of the existence of the TRO – to the extension of which Defendant has consented, perhaps because it does not prevent the Hotel from housing the asylum seekers – does not prevent the Hotel from

arguing, as it has stated it intends to do when the preliminary injunction is litigated, (ECF No. 29-6 at 22), that the enforcement of the facially neutral Town Codes is discriminatory in this case.  But "in the absence of constitutional or legislative impediments" to raising such issues in state court, the Hotel "has only an apprehension that such rights will be withheld from [it] when [its] case shall come to trial, (and thus) cannot affirm that they are actually denied, or that [it] cannot enforce them."  *Emigrant Sav. Bank*, 668 F.2d at 674; *see Sea Gate*, 2019 WL 8587287, at *8 ("Importantly, a petitioner cannot simply allege that [it] would be unable to enforce [its] rights in practice.").

The required standard is not met by the Hotel's argument that the Town is enforcing its neutral rules selectively.[9]  (*See* Hotel's Opp. at 11, 15.); *see Wells Fargo Bank, N.A. v. Stephens*, No. 14-CV-1982, 2015 WL 6551782, at *2 (D. Conn. Oct. 29, 2015) (section 1443(1) did not apply because defendants relied on mere conclusory allegations "that the foreclosure proceeding was being administered in a racially discriminatory manner"); *Rizzitelli v. Thompson*, No. 11-CV-607, 2014 WL 3819212, at *3 (D. Conn. Aug. 4, 2014) ("To support removal under § 1443(1), it is not sufficient merely to allege that a law, fair on its face, is being administered in a discriminatory manner."); *Murray*, 150 F. Supp. 2d at 530 (remanding case where removal petition "merely allege[d] a violation of [plaintiff's] right to equal protection in the most vague and conclusory fashion").[10]

---

[9] At oral argument before Judge Sciortino in state court, the Hotel's counsel suggested that the Hotel may have been housing veterans long-term without any action by the Town.  (*See* ECF No. 29-6 at 14:18-15:6, 17:18-22, 21:14-20, 31:12-32:11.)  But this allegation turned out to be untrue, and the next day the Hotel's counsel appropriately submitted a letter to correct the record, stating that he had based his remarks on an incorrect statement by the Orange County Executive.  (*See* ECF No. 29-8.)

[10] The Hotel's argument in this regard rests at least in part on the misleading assertion that the Town is enforcing a discriminatory Executive Order ("EO") issued by the Orange

But even if there were evidence of selective enforcement, there is simply no reason to believe that the Hotel's federal rights could not be vindicated in state court.  The ANOR pleads no facts from which the Court can "make the clear prediction that the [Hotel] will be denied or cannot enforce in the courts of the State the right to be free of any attempt to punish [it] for protected activity."  *Rachel*, 384 U.S. at 805.  "[T]he denial of which the removal provision speaks is primarily, *if not exclusively,* a denial resulting from the Constitution or laws of the State."  *New Haven Firefighters*, 120 F. Supp. 3d at 203 (emphasis in original).  The Hotel identifies no provision of New York law that would prevent it from pursuing its federal rights, nor could it:  "Since New York law does not permit infringement of any federal right [defendant] might possess, there is no basis for the prediction, as there was in Strauder and Rachel, that the state court would deny federal rights as a result of following state law."  *Emigrant Sav. Bank*, 668 F.2d at 675.  Indeed, "[t]he purpose of the second prong 'deny or cannot enforce'

---

County Executive.  (*See* ECF No. 20-2; ECF No. 32-3 at 14:13-26:1.)  The Hotel repeatedly and disingenuously asserts that "[t]he EO on its face directs that it will be enforced by municipalities, such as Plaintiff Newburgh, '**through enforcement of local zoning codes, [by which] said migrants and/or asylum seekers will face refusal, or eviction**.'"  (Hotel's Opp. at 5 (alteration and emphasis in original), 7 ("Newburgh sought the same relief exactly as set forth in the EO, which states that it will be enforced by its municipalities, such as Newburgh, '**through enforcement of local zoning codes, [by which] said migrants and/or asylum seekers will face refusal, or eviction**.'" (alteration and emphasis in original)); ANOR ¶ 14 ("The EO on its face directs that it will be enforced by municipalities, such as Newburgh, '**through enforcement of local zoning codes, [by which] said migrants and/or asylum seekers will face refusal, or eviction**.'"); *see* Hotel's Opp. at 1, 6 & n.3.)  The EO may be discriminatory, but it directs no such thing, on its face or otherwise.  Rather, in its recitals, it says that municipal enforcement of codes will lead to eviction and homelessness of migrants, at a time when County shelters are already at full capacity.  (*See* ECF No. 20-2.)  This hardly shows that the Town, in seeking to enforce its codes here, is doing the County's bidding.  Nor does a single passing reference to the EO in the Complaint somehow transform the claims the Town brought – for enforcement of its Codes – into claims for enforcement of the EO.  Indeed, Judge Román declined to accept this case as related to the federal cases involving the EO because, among other things, "on the face of the *Newburgh* . . . complaint[], th[at] case[] concern[s] different local municipal codes, and do[es] not affirmatively raise federal claims like in *Deide* and *Palisades*."  (ECF No. 27.)

requirement 'is to give state courts the power and opportunity to correct alleged denials of a citizen's civil rights whenever possible, and thereby to avoid unnecessary federal interference with state judicial processes.'" *New Haven Firefighters*, 120 F. Supp. 3d at 202 (quoting 14C Wright, Miller & Cooper, *Federal Practice & Procedure* § 3727 (4th ed.)).  The Hotel simply provides no reason to believe that it would be unable "to present to a state court [its] claims or defenses arising out of a federal civil rights statute."  *Id.* at 204.

Thus, the Hotel has not satisfied the requirements for removal under § 1443.[11]

## B.   <u>28 U.S.C. § 1441</u>

Alternatively, the Hotel argues that it may remove this action under 28 U.S.C. § 1441 because this is an "exceptional case" warranting application of the *Grable* exception to the well-pleaded complaint rule.  (*See* Hotel's Opp. at 20-22.)  "To determine whether an issue is 'necessarily raised'" under the first prong of the four-part test, the court considers "whether a right or immunity created by the Constitution or laws of the United States is an element, and an

---

[11]   The Hotel asserts that it is entitled to an evidentiary hearing on whether it can remove under § 1443(1).  (*See* Hotel's Opp. at 16-18.)  But in the cases on which it relies, hearings on the motives of the plaintiff or prosecutor were appropriate because there, unlike here, the court had a reason to believe that if discrimination was at work, the defendant's federal rights would not be protected in state court.  *See Rachel*, 384 U.S. at 805 (having to defend prosecutions under state criminal trespass law, if brought solely for racial reasons, would itself amount to denial of federal rights under section 203(c) of the Civil Rights Act of 1964); *City of Baton Rouge v. Douglas*, 446 F.2d 874, 875 (5th Cir. 1971) (*per curiam*) (to the same effect); *Mahaney v. State of La.*, 427 F.2d 850, 851 (5th Cir. 1970) (*per curiam*) (same); *Walker v. State of Ga.*, 405 F.2d 1191, 1192 (5th Cir. 1969) (same); *Achtenberg v. State of Miss.*, 393 F.2d 468, 475 (5th Cir. 1968) (same); *see also New Haven Firefighters*, 120 F. Supp. 3d at 187, 196-206 (procedural limitations on state court quo warranto actions would preclude state court from considering equitable defense under Title VII).  Nor does *Northside Realty Assocs., Inc. v. Chapman*, 411 F. Supp. 1195 (N.D. Ga. 1976), support the Hotel's position.  Not only was that case, unlike this one, a rare case like *Rachel* in which there was a federal right not to be subjected to the state lawsuit at all, but it relied on a Fifth Circuit case, *see id.* at 1199 (citing *Whatley v. City of Vidalia*, 399 F.2d 521 (5th Cir. 1968)), that the Second Circuit has rejected, *see Emigrant Sav. Bank*, 668 F.2d at 675 n.4; *Chestnut Ridge*, 2008 WL 4525753, at *13-14.

essential one, of the plaintiff's cause of action." *Solomon*, 62 F.4th at 64. In other words, "a federal issue is necessarily raised when the very success of the state claim depends on giving effect to a federal requirement and the federal issue is an essential element of the state law claim." *Villella v. Logan*, No. 20-CV-9905, 2021 WL 4060371, at *3 (S.D.N.Y. Sept. 7, 2021). This inquiry "must be unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose. . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit the defense is the only question truly at issue in the case." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021). "A mere speculative possibility that a federal question may arise at some point in the proceeding is insufficient to establish jurisdiction in federal court." *Id.*

Here, Plaintiff's claims arise under local municipal codes and do not raise any questions of federal law on their face. The Hotel asks the Court to find that Plaintiff has necessarily raised substantial issues relating to alleged violations of federal civil rights and federal immigration policy through enforcement of facially neutral zoning laws, pointing to filings in other cases involving different defendants, pleadings, and issues. (*See* Hotel's Opp. at 21-24.) But it is the Hotel that has raised discrimination and immigration policy. The proper inquiry is whether Plaintiff raised a federal issue in its complaint "unaided by anything alleged in anticipation or avoidance of defenses." *Solomon*, 62 F.4th at 64; *see New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) ("It is not enough that the complaint anticipates a potential federal defense."); *Grohs*, 2017 WL 4678182, at *3 ("Whether construed as a defense . . . a counterclaim . . . or a third-party complaint . . ., [defendant's] allegations cannot serve as the

basis for arising under jurisdiction.").[12]  Plaintiff has not.  It has claimed that the Hotel is

violating its certificate of occupancy and zoning use under facially neutral local municipal laws

and has said nothing about civil rights or immigration.  Such claims could succeed or fail without

reaching any federal issues.  *See Shinnecock*, 686 F.3d at 140-41 (state law claims regarding

whether tribe's construction of casino would violate local and state law did not necessarily raise

federal issue because those were distinct questions from whether tribe was protected from suit by

sovereign immunity and whether federal statute supplanted tribe's common law right to operate

casino).  Thus, "the first element of [the *Grable*] test is not present [because] all of the plaintiff's

claims seek relief under state law and none necessarily raises a federal issue."  *Villella*, 2021 WL

4060371, at *3.

Because the Hotel fails to satisfy the first requirement of the *Grable* exception, and

removal is therefore not proper pursuant to federal "arising under" jurisdiction, I need not

consider the remaining factors.  *See Torres*, 2023 WL 2754305, at *3.

---

[12]  To the extent that the Hotel contends that *Tantaros* and *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 475 (S.D.N.Y. 2013), support removing a case based on a federal defense, the Hotel is mistaken.  In *Tantaros*, the Second Circuit determined that state law claims involving the interpretation of C.P.L.R. § 7515 – a New York statute that renders void mandatory arbitration clauses covering employment discrimination "[e]xcept where inconsistent with federal law" – necessarily raised a federal question as to preemption by federal law, because consistency with federal law was an element of the claim.  *See* 12 F.4th at 143-45 (describing C.P.L.R. section 7515 as "no ordinary cause of action" because it "embedd[ed] the issue of preemption into the [statute's] operative provision," and thus "transform[ed] questions about consistency with federal law] from doubtful and conjectural issues into a concrete dispute ripe for judicial review").  Likewise, in *Facebook*, the court determined that the state law negligence claims were based on duties imposed by federal law and required a determination of whether NASDAQ – a national securities exchange – complied with its obligations under the Securities Exchange Act of 1934 as well as rules and regulations promulgated by the Securities and Exchange Commission.  *See* 922 F. Supp. 2d at 484-85.  The resolution of claims that challenged NASDAQ's design "require[d] a court to construe federal securities laws and therefore implicate[d] a substantial federal question."  *Id.* at 485.  In both cases the claims as framed by the plaintiffs implicated the federal interest.  The Hotel has not shown how the same can be said for this case.

**V.**     <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's motion to remand is GRANTED.  The Clerk of

Court is respectfully directed to terminate the pending motion, (ECF No. 29), and remand this

case to the Supreme Court of the State of New York, Orange County.  The TRO will remain in

effect until such time as that Court sees fit to alter it.

**SO ORDERED.**

Dated: January 23, 2024
        White Plains, New York

_____
        CATHY SEIBEL, U.S.D.J.